CASTEEL *v.* K. LEE WILLIAMS THEATRES, INC.

5-60                                                       256 S. W. 2d 732

Opinion delivered April 13, 1953.

*Gordon B. Carlton,* for appellant.

*Collins, Core & Collins,* for appellee.

J. SEABORN HOLT, J.   Appellant, David Casteel, sued appellee, K. Lee Williams Theatres, Inc., to recover a cash prize of $70, which he alleged was due him under the provisions of § 84-2209, Ark. Stats. 1947, which provides: ''The method of business advertising now or hereafter to be conducted in this State by the giving away of prizes consisting of money or other thing of value, where no payment of money or other thing of value is required of participants in such awards, whether such advertising plan be entitled, 'Bank Night,' 'Buck Nite,' or any other name whatsoever is hereby declared to be a legal form of advertising.''   Appellee denied any liability and a trial

resulted in a judgment in appellee's favor. This appeal followed.

The record discloses that after appellant had offered his testimony and rested his case, appellee, without offering any evidence in defense, asked for an instructed verdict in its favor, whereupon appellant's counsel stated to the court: "Your Honor, my recollection is that the defendant asked for a directed verdict, and the plaintiff joins him in that request and the effect of it is to take it from the jury and authorize the Court to render a decision."

It thus appears that both parties waived any further testimony, asked for instructed verdicts, and agreed that the court should decide the case. The court then directed a verdict for appellee.

In these circumstances, our rule is well settled that if there is any substantial evidence to support the judgment of the trial court, we must affirm.

"Where both parties have offered their testimony, and each requests the court for a directed verdict and requests no other instruction, the trial court may treat the case as having been withdrawn from the jury and submitted to the court sitting as a jury, and the judgment of the court, pronounced under the circumstances, has the same effect as if the jury itself had decided the case." *Holloway* v. *Parker*, 197 Ark. 209, 122 S. W. 2d 563, 119 A. L. R. 1359, and in *Stewart* v. *Hedrick*, 205 Ark. 1063, 172 S. W. 2d 416, we held: (Headnote 1). "Where both parties request instructed verdicts, there being no other request for instructions, and the case is withdrawn from the jury the judgment rendered by the court will be affirmed if there is any substantial testimony to support it."

After a review of all the testimony, we have concluded that there was some substantial evidence to support the judgment of the court.

Appellant lived with his family on a farm about three and one-half miles from Horatio. He and his wife had been regularly attending appellee's theatre (Horatio

Theatre) "approximately once a week" for a year and "Q. And you had been attending approximately once a week? A. Yes. Q. Had they been having bank night practically during all that time? A. During a part of it. Q. How long had they been having it? A. Probably since it was put in. Q. Probably the whole year? A. Yes."

On the night of August 28, 1951 (Tuesday), appellant and his wife attended the theatre. He registered for the drawing and received a number. The following night, (Wednesday), as was the custom, there was a drawing and appellant's name was announced as the winner. He was not present. He did not learn this until "after midnight sometime" on Thursday night following. He had left home in his truck with cattle for Texarkana, Arkansas, about 6:30 A.M. on Thursday morning and on his return that night "after midnight" was informed by his wife that he had won the prize and further that she had that day gone to the theatre and tried to collect the award for him from the cashier and "Q. Did you tell her (cashier) who you were? A. I didn't tell her who I was, but said I heard my husband's name was called for the money. Q. She didn't ask you if you were David Casteel's wife. A. No. . . . I was never personally acquainted with Mrs. Pride, but I worked in Horatio several years. . . . And you stated you understood your husband won the award the night before? A. Yes. Q. What did she say to you? A. Nothing, only I asked if I could sign for the money and she said no, he had to sign for it in person."

Immediately on receiving this information from his wife, appellant got in his truck, after midnight, and drove to the home of Mrs. Pride, the cashier, in Horatio, approximately three and one-half miles, and "Q. Did you identify yourself? Tell her who you were. A. Yes, I told her I had come to claim the award. Q. What did she tell you about the money? A. That I was too late. She said you had to call for it in twenty-four hours."

Appellant stoutly denied that he knew of any twenty-four hour rule prior to learning of it from Mrs. Pride.

Just as the weight and sufficiency of competent evidence is for the jury's determination in jury trials, so here, where the trial court stands in place of the jury, that same power rests with the court.

In viewing the testimony, we must give to it its strongest probative force in favor of appellee and if we find any substantial evidence to support the judgment, we must, as indicated, affirm it.

Here, we think the trial court was warranted in finding from appellant's testimony and actions that he must have known of the rules (among them being the twenty-four hour rule) governing the drawings and winners. He and his wife had been regular attendants at the theatre at least once a week for a year or more and he knew that the drawings had occurred every Wednesday night over that period. He also knew how the drawings were conducted. We attach much significance to the fact that appellant, within an hour or so after his return to his home from Texarkana on Thursday night, after the twenty-four hour period had obviously expired, and without waiting for the daylight hours of the following day, drove in his truck some three and one-half miles to Horatio, to the home of Mrs. Pride, aroused her, and demanded the award. Appellant offered no explanation of this rather unusual haste. A fair inference would appear to be that he did know of the twenty-four hour rule.

We do not consider the validity of the above section since that question is not presented.

Affirmed.

Justice MILLWEE not participating.

ROBINSON, Justice, concurring. The majority holds that when the defendant asked for an instructed verdict at the finish of plaintiff's testimony, the trial court was authorized to take the case from the jury at that point because the plaintiff also at that time asked for an instructed verdict. This Court invokes the rule which applies when both parties have put on all their evidence and each has asked for an instructed verdict, and no other

instructions are requested; but in my opinion an entirely different situation is here presented.

The defendant did not waive his right to proceed with the evidence because of his request for the directed verdict. His motion at that point was in effect a demurrer to the evidence. If the court had not granted the motion, defendant would not have been precluded from proceeding to introduce his evidence. Instead of counsel for the defendant waiving his right to put on any evidence and submitting the case to the court, counsel objected to the court doing anything at that point other than passing on the motion for a directed verdict for the defendant on the ground that plaintiff had not made a case sufficient to go to the jury.

But appellant is in no position to complain of the Court's action in taking the case from the jury and deciding it on the facts. When counsel for defendant moved for a directed verdict at the close of plaintiff's testimony, counsel for plaintiff said: "Your Honor, my recollection is that the defendant asked for a directed verdict and the plaintiff joins him in that request and the effect of it is to take it from the jury and authorize the court to render a decision."

It is well established that upon the doctrine of invited error, a party cannot complain of an alleged erroneous action of the trial court, if he himself has endorsed such action. *Missouri Pacific Railroad Co., Thompson, Trustee* v. *Gilbert, Adm.*, 206 Ark. 683, 178 S. W. 2d 73.

I concur in the result reached by the majority.

Mr. Justice GEORGE ROSE SMITH joins in this opinion.